UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

MELVIN MIMS,

    Petitioner,

v.                                          CASE NO. 6:06-cv-1595-Orl-31DAB

SECRETARY, DEPARTMENT OF
CORRECTIONS, et al.,

    Respondents.

## ORDER

Petitioner initiated this action for habeas corpus relief pursuant to 28 U.S.C. section 2254 (Doc. No. 1). Upon consideration of the petition, the Court ordered Respondents to show cause why the relief sought in the petition should not be granted. Thereafter, Respondents filed a response to the petition for writ of habeas corpus in compliance with this Court's instructions and with the *Rules Governing Section 2254 Cases in the United States District Courts* (Doc. No. 14). Petitioner filed a reply to the response (Doc. No. 18).

Petitioner alleges seven claims for relief in his habeas petition: (1) he did not receive a fair trial or have an impartial jury based on the trial judge's behavior; (2) he did not receive a fair trial or have an impartial jury based on the trial court's disclosure that his attorney was a public defender; (3) trial counsel rendered ineffective assistance by failing to impeach Derek and Kim Johnson; (4) trial counsel rendered ineffective assistance by failing to request an arrest warrant for Rama Alligood; (5) trial counsel rendered ineffective

assistance by failing to advise Petitioner that he was entitled to a "live body line-up"; (6) trial counsel rendered ineffective assistance by failing to question James Padgett about his prior statement; and (7) the trial court erred in sentencing Petitioner as a habitual felony offender and a prison releasee reoffender. For the following reasons, the petition is denied.

*I.     Procedural History*

Petitioner was charged with one count of robbery without a weapon. After a jury trial, Petitioner was found guilty as charged. The state trial court adjudicated Petitioner guilty and sentenced him to a thirteen-year term of imprisonment as a habitual felony offender and to a fifteen-year term of imprisonment as a prison releasee reoffender, with both sentences to run concurrently. Petitioner appealed, and the Fifth District Court of Appeal of Florida *per curiam* affirmed.

Petitioner filed a motion for post-conviction relief pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure. The state court denied four of Petitioner's claims, but granted relief on Petitioner's claim regarding his sentence as a habitual felony offender. In accordance with its order, the state court struck the habitual felony offender portion of Petitioner's sentence. Petitioner appealed, and the appellate court *per curiam* affirmed.

Petitioner filed a motion to correct illegal sentence pursuant to Rule 3.800(a) of the Florida Rules of Criminal Procedure. The state trial court denied the motion. Petitioner did not appeal.

Petitioner filed a second Rule 3.850 motion, which was denied based on lack of jurisdiction. Petitioner appealed, and the state appellate court *per curiam* affirmed.

2

Petitioner filed a petition to invoke all writs jurisdiction with the Florida Supreme Court, which dismissed the petition for lack of jurisdiction.

## II.  Legal Standards

### A.  Standard of Review Under the Antiterrorism Effective Death Penalty Act ("AEDPA")

Pursuant to the AEDPA, federal habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  The phrase "clearly established Federal law," encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000).

"[S]ection 2254(d)(1) provides two separate bases for reviewing state court decisions; the 'contrary to' and 'unreasonable application' clauses articulate independent considerations a federal court must consider." *Maharaj v. Secretary for Dep't. of Corr.*, 432 F.3d 1292, 1308 (11th Cir. 2005).  The meaning of the clauses was discussed by the Eleventh Circuit Court of Appeals in *Parker v. Head*, 244 F.3d 831, 835 (11th Cir. 2001):

> Under the "contrary to" clause, a federal court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the United States Supreme Court] on a question of law or if the state court decides a case differently than [the United States Supreme Court] has on a set of materially indistinguishable facts.  Under the 'unreasonable application' clause, a

3

>federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the United States Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case.

Even if the federal court concludes that the state court applied federal law incorrectly, habeas relief is appropriate only if that application was "objectively unreasonable." *Id*.

Finally, under § 2254(d)(2), a federal court may grant a writ of habeas corpus if the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." A determination of a factual issue made by a state court, however, shall be presumed correct, and the habeas petitioner shall have the burden of rebutting the presumption of correctness by clear and convincing evidence. *See Parker*, 244 F.3d at 835-36; 28 U.S.C. § 2254(e)(1).

### B.     *Standard for Ineffective Assistance of Trial Counsel*

The United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984), established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance: (1) whether counsel's performance was deficient and "fell below an objective standard of reasonableness"; and (2) whether the deficient performance prejudiced the defense.[1] *Id*. at 687-88. A court must adhere to a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id*. at 689-90. "Thus, a court deciding an actual

---

[1] In *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993), the United States Supreme Court clarified that the prejudice prong of the test does not focus solely on mere outcome determination; rather, to establish prejudice, a criminal defendant must show that counsel's deficient representation rendered the result of the trial fundamentally unfair or unreliable.

ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* at 690; *Gates v. Zant*, 863 F.2d 1492, 1497 (11th Cir. 1989).

As observed by the Eleventh Circuit Court of Appeals, the test for ineffective assistance of counsel:

> has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial. Courts also should at the start presume effectiveness and should always avoid second guessing with the benefit of hindsight. *Strickland* encourages reviewing courts to allow lawyers broad discretion to represent their clients by pursuing their own strategy. We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220-21 (11th Cir. 1992) (citation omitted). Under those rules and presumptions, "the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994).

### III.   Analysis

#### A.   Claim One

Petitioner asserts that he was denied a fair trial and impartial jury based on the trial judge's behavior. Specifically, Petitioner maintains that the trial court prevented him from presenting an effective defense because the judge had a policy prohibiting bench conferences. As such, Petitioner argues that he was prejudiced by the trial court's refusal

to hear argument at the bench regarding the effect of a witness's testimony that Petitioner was seen panhandling on prior occasions in the area where the robbery occurred. Additionally, Petitioner asserts that the trial court's admonitions to defense counsel before the jury regarding his objection to the admission of the testimony and request for a bench conference prejudiced his defense.  Petitioner raised this claim on direct appeal, and the state appellate court *per curiam* affirmed.  (App. F.)

Claims asserting a violation of state law, including state evidentiary error, are not cognizable in a federal habeas petition.  *Daniels v. Lafler*, 192 Fed. Appx. 408, 419 (6th Cir. 2006) (citing *Stuart v. Wilson*, 442 F.3d 506, 513 n.3 (6th Cir. 2006)).  However, if an evidentiary ruling is "'so egregious that it results in a denial of fundamental fairness, it may violate due process and thus warrant habeas relief.'" *Id*. at 419-20 (quoting *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003) (citation omitted)).  The Eleventh Circuit has stated:

> We review state court evidentiary rulings on a petition for habeas corpus to determine only whether the error, if any, was of such magnitude as to deny petitioner his right to a fair trial. Erroneously admitted evidence deprives a defendant of fundamental fairness only if it was a crucial, critical, highly significant factor in the [defendant's] conviction.

*Jacobs v. Singletary*, 952 F.2d 1282, 1296 (11th Cir. 1992) (internal quotation marks and citations omitted).

The record establishes that at the beginning of the trial, the trial judge notified the parties of his preference not to have bench conferences.  Thereafter, the trial court considered and overruled defense counsel's objections to the admission of testimony

concerning Petitioner's panhandling. The victim testified that she knew Petitioner prior to the robbery as she had seen him before and given him money when he was panhandling. Thus, the victim's testimony concerning panhandling was given in the course of explaining how she was able to positively identify Petitioner as the perpetrator. Moreover, the victim testified that she was 100% certain that Petitioner was the person who robbed her and another eyewitness testified that he had known Petitioner for approximately thirteen years prior to the robbery. Given the weight of the testimony against Petitioner, this Court cannot conclude that, even assuming the evidence regarding panhandling was erroneously admitted, it was a significant factor in his conviction. Accordingly, this claim is denied pursuant to § 2254(d).

  B.    *Claim Two*

Petitioner asserts that he was deprived of a fair trial and impartial jury because the trial court informed the jury that his attorney was a public defender and denied his motion for mistrial on this basis. Petitioner raised this claim on direct appeal, and the state appellate court *per curiam* affirmed. (App. F.)

In Florida, trial courts have broad discretion in regulating the conduct of the voir dire examination of the venire. *See Watson v. State*, 693 So. 2d 69, 70 (Fla. 2d DCA 1997). "The purpose of voir dire is to ascertain whether potential jurors can render a verdict solely on the basis of evidence presented and the charge of the trial court." *Wilcox v. Ford*, 813 F.2d 1140, 1150 (11th Cir. 1987). "Prospective jurors are presumed impartial; the challenger to that presumption bears the burden of proving bias, and a conclusory statement that the

7

jurors were biased is insufficient. To maintain a claim that a biased juror prejudiced him, a petitioner must show that the juror was actually biased against him." *Diaz v. Sec'y For Dept. of Corr.*, 2006 WL 3469522, at *4 (S.D. Fla. 2006) (citing *Smith v. Phillips*, 455 U.S. 209 (1982)). Additionally, pursuant to Florida law, a motion for mistrial should be granted only when the error was so prejudicial and fundamental that it denied the defendant of a fair trial. *See Buenoano v. State*, 527 So. 2d 194 (Fla. 1988).

In the instant case, the record reflects that at the beginning of voir dire the trial judge asked defense counsel if he was with the Public Defender's Office ("PDO") in order to ascertain whether anyone on the venire knew anyone who worked in the PDO. Defense counsel objected to the trial court's question on the basis that it was prejudicial to his client. The trial court overruled the objection and subsequently denied the defense's motion for mistrial. Thereafter, the trial court questioned the venire regarding whether they (1) could follow the law, (2) understood that Petitioner was presumed innocent until proven guilty beyond a reasonable doubt, and (3) understood that the State carried the burden of proof. (App. B at 17-18.) After review of the entire voir dire, the Court concludes that Petitioner has not demonstrated that any juror was actually biased against him. *See Rogers v. McMullen*, 673 F.2d 1185, 1188 (11th Cir. 1982) (noting that juries must be comprised of competent and impartial persons meaning that they are willing to decide the issue solely on the evidence before them); *see also Wilcox*, 813 F. 2d at 1150 (noting that federal courts reviewing the question of whether a particular juror is impartial must determine whether there is fair support in the record for the state court's conclusion that the juror would be

8

impartial). Furthermore, the Court finds that Petitioner has not established that the state court's question regarding whether counsel worked for the PDO deprived Petitioner of a fair trial. The jury heard sufficient evidence from which it could have found Petitioner guilty. Accordingly, this claim is denied pursuant to § 2254(d).

### C.     Claim Three

Petitioner asserts that trial counsel rendered ineffective assistance by failing to impeach Derek and Kim Johnson with information contained in the police report. Specifically, Petitioner contends that counsel should have questioned these witnesses regarding their statements to police as to what the perpetrator was wearing. Petitioner maintains that they told the police at the time of the incident that the perpetrator was wearing grey pants, but when asked at trial what the perpetrator was wearing, the witnesses could only recall that he was wearing a hat. Petitioner argues that had counsel impeached the witnesses's testimony, the outcome of the trial would have been different.

Petitioner raised this claim in his first Rule 3.850 motion. Applying *Strickland*, the state trial court denied relief. *See* App. L at 1-2. The trial court reasoned that the Johnsons testified at trial that they could not identify the perpetrator, and the prosecution merely called them as witnesses to obtain their version of the robbery. *Id*. The trial court concluded that Petitioner could not establish that he was prejudiced by counsel's failure to impeach the Johnsons. *Id*. at 2.

The record establishes that the Johnsons testified that they could not identify the perpetrator of the robbery. Thus, it is not clear why impeaching the Johnsons with their

9

police statements regarding what the perpetrator was wearing would have resulted in a different verdict. Moreover, the victim and another witness testified unequivocally that they recognized Petitioner at the time of the robbery because they had seen him at times prior to the robbery. The victim testified that she was 100% certain that Petitioner was the person who robbed her. Accordingly, this claim is denied pursuant to § 2254(d).

  D.  *Claim Four*

Petitioner asserts that trial counsel rendered ineffective assistance by failing to move the court to issue an arrest warrant for Rama Alligood in order to insure his presence at trial. In support of this claim, Petitioner contends that Alligood witnessed the robbery and provided a statement to the police, but was not called as a witness at trial. Petitioner maintains that had Alligood testified, counsel could have impeached his testimony regarding what the perpetrator was wearing with Alligood's police statement.

Petitioner raised this claim in his first Rule 3.850 motion, and the trial court denied relief pursuant to *Strickland*. (App. L at 2.) The court determined that Petitioner was questioned at trial regarding whether there were any witnesses he wished to call to which Petitioner responded no. *Id.* As such, the court found that Petitioner had no reason to claim counsel was ineffective on this basis. *Id.*

Petitioner's allegations are insufficient to support relief on this claim. "[E]vidence about the testimony of a putative witness must generally be presented in the form of actual testimony by the witness or an affidavit. A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an

10

ineffective assistance claim." *United States v. Ashimi*, 932 F.2d 643, 650 (7th Cir. 1991) (footnotes omitted). Hence, the "petitioner must first make a sufficient factual showing, substantiating the proposed witness testimony." *Percival v. Marshall*, No. C-93-20068 RPA, 1996 WL 107279, at *3 (N.D. Cal. March 7, 1996), *affirmed*, No. 96-15724, 1997 WL 31219 (9th Cir. January 23, 1997). "Such evidence might be sworn affidavits or depositions from the potential witnesses stating to what they would have testified." *Id*.

Petitioner has failed to present evidence of actual testimony or any affidavit of alleged testimony which Alligood would have provided if called to testify. Petitioner has not made the requisite factual showing. Petitioner's self-serving speculation will not sustain a claim of ineffective assistance of counsel. Furthermore, even assuming Alligood had been called as a witness and subsequently had his testimony impeached regarding what the perpetrator was wearing, Petitioner cannot demonstrate he suffered any prejudice from counsel's failure to question Alligood. As noted *supra*, the victim and another witness unequivocally identified Petitioner as the perpetrator. Accordingly, Petitioner has not demonstrated that the state court's determination was either contrary to or an unreasonable application of clearly established federal law, and this claim is denied pursuant to § 2254(d).

  E. *Claim Five*

Petitioner asserts that counsel rendered ineffective assistance by failing to advise him that he was entitled to a "live body lineup" before he went to trial. Petitioner contends

11

that the victim would have identified another individual from the line-up had counsel requested one.

Petitioner raised this claim in his first Rule 3.850 motion, and the trial court denied relief. (App. L at 2.) The court reasoned that a line-up would not have altered the victim's identification of Petitioner. *Id.* The court noted that the victim testified at trial that "she had seen [Petitioner] at least four times in the past in Sanford and she recognized him immediately." *Id.* As such, the court concluded that a line-up would not have changed the outcome of the trial. *Id.*

The United States Supreme Court has noted that "[s]uggestive confrontations are disapproved because they increase the likelihood of misidentification, and unnecessarily suggestive ones are condemned for the further reason that the increased chance of misidentification is gratuitous." *Neil v. Biggers*, 409 U.S. 188, 198 (1972). However, suggestive "show-up" identifications are admissible if, based on the totality of the circumstances, the identification was reliable. *Id.* at 199. "[T]he factors to be considered in evaluating the likelihood of misidentification include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." *Id.* at 199-200. "The state court's findings on each of the *Biggers* factors are entitled to a presumption of correctness, and [the Petitioner must] show[] that those

findings were clearly erroneous." *Hawkins v. Sec., Florida Dept. of Corr.*, 2007 WL 669293, at *3 (11th Cir. 2007).

The record reveals that the victim testified that she recognized Petitioner when he approached her on the day of the robbery. She stated that Petitioner approached her and asked her for money and subsequently grabbed the money she held in her hand. She stated that she had seen him on at least four other occasions and was 100% certain of her identification. Furthermore, the victim identified Petitioner on the same day of the robbery. Thus, the victim had an opportunity to view Petitioner without any distraction, and she was certain of her identification at the time she identified him. Based on the totality of circumstances, the Court finds that there is not "a very substantial likelihood of irreparable misidentification that would have led to the exclusion of the identification evidence." *Hawkins*, 2007 WL 669293 at *3. Moreover, another witness identified Petitioner as the perpetrator. Like the victim, the witness testified that he had seen Petitioner numerous times prior to the robbery and had known him for approximately thirteen years. In sum, the Court concludes that Petitioner has not demonstrated that counsel was ineffective for failing to request a line-up or that he was prejudiced by counsel's failure to do so. Accordingly, this claim is denied pursuant to § 2254(d).

### F.  *Claim Six*

Petitioner asserts that counsel rendered ineffective assistance by failing to ask James Padgett why he did not tell the police that he saw Petitioner throw down a crowbar. Petitioner maintains that if counsel had questioned Padgett about his failure to tell the

police about the crowbar on the day of the robbery, then his credibility would have been impeached.

Petitioner raised this claim in his first Rule 3.850 motion. The state trial court denied relief pursuant to *Strickland*. The court reasoned that the presence of a crowbar was of questionable relevance given that possession of a crowbar was not an element of the crime. (App. L at 2.) The court noted that questions as to the crowbar would have been solely for impeachment as to a collateral issue. *Id.* The court further noted that counsel impeached Padgett with his prior felony convictions. *Id.* The court concluded that counsel's failure to impeach Padgett on the issue of the crowbar did not result in ineffective assistance. *Id.*

At trial, Padgett testified that he observed Petitioner drop a small metal object like a crowbar when leaving the scene of the robbery. However, as noted by the state court, the possession of a weapon or crowbar was not an element of the offense. Furthermore, the victim and Padgett unequivocally identified Petitioner as the perpetrator. Thus, Petitioner has not demonstrated that counsel's failure to impeach Padgett on the issue of the crowbar was either deficient performance or that he was prejudiced by counsel's failure to do so. Accordingly, this claim is denied pursuant to § 2254(d).

G.   *Claim Seven*

Petitioner asserts that the trial court lacked authority to sentence him as a habitual felony offender. Petitioner raised this claim in his first Rule 3.850 motion, and the trial court granted relief. *See* App. L at 2. The trial court held that Petitioner's habitual felony offender sentence was illegal and struck the sentence. *Id.*

Given that the state court granted relief on this claim, it is not clear why Petitioner raised the issue in the instant habeas petition. The Court, therefore, denies the claim as moot.

Any of Petitioner's allegations not specifically addressed herein have been found to be without merit.

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. The Petition for Writ of Habeas Corpus (Doc. No. 1) filed by Melvin Mims is **DENIED**, and this case is **DISMISSED WITH PREJUDICE**. The Clerk of the Court shall enter judgment accordingly.

2. The Clerk of the Court is directed to close this case.

**DONE AND ORDERED** at Orlando, Florida, this 23rd day of October, 2008.

                                                                                    GREGORY A. PRESNELL
                                                                                    UNITED STATES DISTRICT JUDGE

Copies to:
sc 10/23
Counsel of Record
Melvin Mims